The court will now hear argument in McDonald v. Castro. If it pleases the court, Gerald Newton, on behalf of appellant McDonald, and I would like to reserve four minutes for rebuttal if that's acceptable. I think that it is extremely important in this case that we realize that this was an extremely close factual case for the jury to decide. The prosecution relied upon time of death of the victim to conclude that Mr. McDonald may have been guilty of the murder. There were three different measures of time or death that were testified to by the coroner. One was liver temperature, one was rigor mortis, and one was lividity. All of those placed the most likely time of death around 1 a.m. Two of those placed the time of death between like 1 and 3 a.m. and 1 and 5 a.m. The other one had a broader range because it had been so long since the temperature was taken, and the coroner estimated that the time of death was 1 a.m., but that he then said plus or minus five hours. He initially said six hours, and he backed it up to five hours. It is most probable, taking that testimony, that the time of death was in fact 1 a.m. or thereafter. There is testimony, however, that under one means of determining time of death, it maybe could have been 8 a.m. or 8 p.m. or 9 p.m. the previous day. The prosecution relied in essence on three witnesses to convict Mr. McDonald. The first witness they relied upon was Mr. Castaneda, who wasn't a witness at all. Mr. Castaneda's testimony from a 402 hearing was read to the jury. Even the California courts concluded that this was improper. In determining whether or not this constitutional error was harmless, the California courts applied the wrong test. The California court says, well, there was some evidence by another witness, Stott, that McDonald said he committed the crime. Yes, there was that evidence, and there was also evidence from a defense witness, Davis, that this never, ever happened. But the California court of appeal doesn't look at the case. They only look at the most skewed view of facts possible for the prosecution in determining whether or not this error was harmless. That's simply totally incorrect. You must review the record as a whole to determine whether or not the error was harmless, and that's very clear under Delaware v. Van Arsdale. I am troubled by the Castaneda testimony and that of all the things in the brief here. And if the standard and the burden being on the government, you know, whether it contributed to the conviction, I guess the question I have is much of your brief is focused on the fact that without Castaneda, you don't have the motive issue on the gang. But I'm still wrestling with this issue of kind of the Davis and the Stott's testimony, so maybe you can put it in the context of harmless error. It's even worse than that. Aside from the fact the California Supreme Court applied the wrong test and they only look at the worst possible interpretation, they rely on Stott's testimony. Stott's testimony, which he recanted part of later, was that McDonald with McNary with Davis and McPherson came up and McDonald said, yeah, we killed him sometime later. After that point in time, Stott's withdraws or retracts, recants the statement with regard to incriminating McNary with regard to that. The defense wants to show that Stott's is a liar. They're precluded from doing so. The defense wants to show that Stott's is biased. They're precluded from doing so. Stott's, prior to this murder, had participated, according to Castaneda and according to McNary, in an ATM robbery murder, and that one of the reasons that the victim died is because people were concerned that the victim was going to finger people in that ATM attempted murder, and that ATM attempted murder, the prosecutors argued, was a premeditated attempted murder with no statute of limitations that provided for life in prison. But was that the one that was never charged? That's the one that was never charged. McDonnell was never allowed to question Stott's with regard to whether he participated in that, which he may have admitted, he may not have, and he was never allowed to bring out this critical fact for the jury to determine in evaluating Stott's' testimony and why Stott's would lie and say McDonnell did the murder or admitted to doing the murder. That's really pretty collateral. Stott's supposedly was involved with another crime, so that affected his credibility, right? That's correct. The judge, didn't Stott, I don't remember, did Stott deny or somebody deny that he was involved in that? No, Stott's did not deny that he was involved in that. It gets even worse than talking about that ATM murder. What did Stott say? Did he say I committed the robbery? According to Castaneda, Stott's told Castaneda that he committed the robbery. According to Castaneda, Stott's came back after the robbery along with the other participants and they admitted to Castaneda that they had committed that robbery. Was Stott's a witness? Yes, Stott's was. If he asked, did you commit the robbery? He wasn't allowed, the defense was not allowed to ask questions. The defense was prohibited from bringing that up. It gets worse. It gets worse. After this case is tried, there's another robbery after it was tried the first time. In that next robbery, Stott's and McNary commit the robbery. Stott's and McNary are held to answer in the superior court. This case is reversed. It comes back for trial. On the last day, that case is dismissed because the prosecution couldn't find their witnesses, never mind the fact that they had preliminary hearing testimony that they could have used to go forward with the case. And the defense is prohibited from cross-examining Stott's about that robbery that he had also committed with McNary. Now, there was cross-examination of some of the other witnesses, was there not? There was no cross-examination of any witness that established that McNary and Stott's committed either robbery in front of the jury. The only testimony that came in was what was read from Castaneda. Neither Stott's was allowed to be asked about these two robberies, nor was McNary wasn't asked because McNary wasn't there. But the point of the matter is that two people that are critical in the prosecution's case, McNary and Stott's, their relationship is never disclosed to the jury because the defense is precluded from doing so. Now, and the California Court of Appeal never looks at this. They ignore the fact that the defense wasn't able to put Stott's in the setting that he should have been put in for the jury to make a decision in violation of the right to confront and cross-examine witnesses completely. Then they ignore the fact that there's evidence in the record that what Stott's says is untrue because it never happened because the words weren't said. I don't understand what you just said. Davis testified that there was never a conversation about this. So instead of saying, well, there was some defense evidence that said this didn't happen and there was some defense prosecution evidence that said it did, and in weighing this record, what should we do? They ignore all that. They ignore the fact that you can't cross-examine Stott's to put him in his setting, which the legions of cases cited in the briefs that you should be able to do that. Then the prosecutor, in closing argument with regard to Castaneda, argues about what McNary would have said. She argues that, taking Castaneda's testimony, that German told McNary to commit it, that McNary asked to recruit people, and that McNary recruited defendant Mr. McDonald to do it, and that McDonald did it because he wanted to be an ace of spades. But the only support at all for that would have been Castaneda's testimony. Then she doesn't call McNary as a witness. Then she comments on the defense failure to call McNary and Hull as a witness. At no time is the jury ever told to disregard the argument of the prosecutor that McNary and Hull would have been called as defense witnesses if they would have helped the defense. Now, it's interesting, because I was looking at this. I thought there was one curative instruction. There was, that the defense doesn't have to call a witness. They weren't told to disregard that remark at any point in time. Is there a motion for mistrial? You know, you've got to take your record. This discourse went on about the prosecutor talking to this for about five pages of the transcript. The defense is not required to call any witness. And the jury did receive that instruction. They were not told that the prosecutor … I understand what they were not told. They were not told a lot of things. Yeah. But in evaluating whether there's a constitutional violation, you look at what the proposed evidence was, how serious it was, what the judge said, and you have to be able to say, particularly at this stage in the proceeding, that it clearly was a constitutional violation. Well, I think that there is no question but what the prosecutor … In fact, the California Court of Appeal held that the prosecutor committed misconduct by doing this. So it's relatively clear on this record that there was misconduct by the prosecutor in making this argument. The California Court of Appeal, however, again, doesn't look at the record of this trial about determining whether that was harmful. They go look at the previous trial and say, well, McNary testified there, so there was no need for the defense to call McNary here because he maybe heard him before. And that is a completely fallacious argument. And, in fact, when I was looking at the cases again, one of the cases I cite talks about the kind of situation. You know what? You could just talk a little quieter. It's a little easier to listen to. I have a question going back to the California Court of Appeals. The Court of Appeals says, well, there's the guitar strings and then there's the admission to stocks, which I guess they're saying he wants to be in the gang. If those are the only two points the California Court of Appeals focused on and then you're saying, but there's this other evidence they should have looked at, what standard do we use to figure out if they were unreasonable? Well, the law is clear the way I read Vanarsdale, the Vanarsdale case that you have to look at the entire record in determining whether or not error is harmless or not. It's quite clear here that the entire record is never even briefly discussed by the California Court of Appeals. They don't talk about the defendant's timeline. When you said before that they were using the wrong standard, is it because they weren't looking at the whole record or you think they were using the wrong legal standard? Well, I think that they moused the right standard. Okay. But they didn't apply it because they didn't look at the whole record. The whole record, okay. So it's clear. Then let's take stocks. Stocks says that the defendant makes one statement in advance. I know how, when, or why. There's four other people that supposedly have some kind of privy or connection to this, and it goes back to a stolen piece of electronics equipment. Every one of those four people are called and refute that this ever happened. Now, does that even appear in the opinion? Does anyone discuss this in the opinion? Would a reasonable juror perhaps be troubled about the fact that out of five participants, allegedly only one has any recollection about that? And, oh, by the way, he may have told somebody else at another time that it was McNary that did this instead of McDonald? No. The California Court of Appeals says, hey, it's good enough for us. We can find something somewhere that supports it. Then we get to the prosecutor in argument and arguing about the time of death and not entering the stipulation. The prosecution had proposed the stipulation before. The stipulation is set forth in there. The stipulation was that Alex used a stolen phone and made the phone calls at the time reflected on those records. She argues to the jury, we don't know that he used this phone. We don't know that the phone calls were made at the time here. Therefore, McDonald is guilty. The only problem with this theory, this argument, is it's contrary to every known fact. Well, didn't on this stipulation, weren't the people to whom the calls were made testify in this case? I noticed there seems to be a dispute in the briefs. You say no, your opponents say yes, and I didn't have time to look at the records. Tell me what the records show. Part of their testimony from the previous trial was read in. From the people who? That's correct. That's correct. But the prosecutor then argued that the phone calls weren't made at those times by Alex. Is that a legitimate argument? After all the evidence? Not when they know that the phone calls and had previously stated that the phone calls were made at that time on that phone. It's one. There was a statement made by the prosecutor to the jury, but not part of the stipulation, and the stipulation was far more open and not quite as specific as the prosecutor's statement. The new prosecutor said, I'm not stipulating to it. That's exactly right. The new prosecutor wouldn't stipulate to that because she knew she couldn't convict McDonald if that stipulation was entered into. And this had nothing to do. You're saying that he was convicted when? Without the stipulation. Prior trial. So that doesn't make much sense to me. He was convicted at the prior trial because before the jury started, one of the jurors turned to the other jurors and said, you know, these white boys killed that guy. You know, you're arguing all over the map instead of being specific. But I apologize. I get it is that you wanted more. You wanted the stipulation. But you really wanted what the prosecutor said. The witnesses who received the telephone calls, their testimony was read to this jury. I agree that that is correct. I don't know how you can make a constitutional violation out of that. It's something new to me. Because the prosecutor argued both contrary to that evidence and to the stipulation to the jury when she had no reason to believe that what she was arguing was true. And the reason she made that argument is because it was the only way that allowed her to convict McDonald. So she never once tried to explain how McDonald could be guilty if Alex had made the calls at the time reflected on the telephone bills to these people. Because she couldn't. Counsel, you're down to less than three minutes if you want to reserve. Yes, I would. Thank you. You may do so. Good morning, Your Honors. Deputy Attorney General Joseph Lee on behalf of the warden. I'm going to try and go in the order of the issues that were presented in the brief, starting with the Castaneda 402 issue. I find it very ironic that Petitioner is now claiming that Castaneda's 402 hearing testimony was error and so damaging to him. If you look at the closing argument at trial, Petitioner's trial counsel used Castaneda's testimony to his advantage. Castaneda's testimony established only that McDonald wanted to become a member of the Ace of Spades. Scott's testified to the same thing. It was undisputed, basically, that McDonald wanted to be a member of the Ace of Spades. It had to do with what you have to do to get into the Ace of Spades. Was there any other testimony that there's this, like, initiation fee, so to speak? There was testimony as to that. However, Castaneda's testimony established that McDonald was present when the victim was beat up by German, McDonald's co-defendant, and that because McDonald was there, McDonald essentially foiled their attempts to kill the victim. Castaneda also testified that the murder of the victim was never mentioned as part of McDonald's initiation into the Ace of Spades. So in closing argument, Petitioner's trial counsel used that to his advantage to argue that, hey, Castaneda's testimony shows my client was not involved. Is there any connection other than the Castaneda testimony between this link with German and McNary? German and McNary? I believe Stocks testified to that McNary, and this goes to another argument, because Petitioner is contending that Stocks, they weren't able to bring out a bias in favor of Stocks in favor of McNary. However, Stocks testified that McNary said, we killed the victim. Then McDonald described some of the details. Then McNary later goes into more detail. So this whole notion that — I wasn't clear. This is really going back to the Castaneda testimony. Yes, Your Honor. Because it seemed to me that he was critical linking up McDonald and then the sort of McNary and German connection. So what I was looking for is, is there any — I couldn't find elsewhere, but again, there's a lot here — Yes, Your Honor. — of where the German and McNary comes in, other than through Castaneda, which the California Supreme Court said, you know, was a constitutional violation. I believe the Castaneda testimony was critical in establishing the link between German and McNary. That is why the California Court of Appeal reversed as to German on the 402 testimony. However, as I just stated, the testimony, as it applied to McDonald, actually was to his benefit. And in addition to that, we have the harmless error standard Chapman, which the Court of Appeal applied, which is more forgiving than the Brecht standard, which we are to apply here on appeal. Tell me this. What happened to Stocks? He was your prosecutor. Is that correct? Excuse me, Your Honor? Adam Stocks testified that McDonald was a participant in the murder. That's correct. And so was Stocks, wasn't he? I believe — I'm not sure on that. I believe Stocks denied involvement in it, in the murder. I thought he was one of the conspirators. Maybe I'm wrong. My understanding is that — from the evidence is that German ordered McNary and Hull to commit the killing. Well, how did Stocks incriminate McDonald then? He said McDonald confessed to him? That's correct. Stocks testified that there was a conversation in the bleachers where McNary said, we killed the victim. McDonald then described some of the details of the killing. And then according to Stocks, McNary later in the day went into more detail on the killing. So for Petitioner to say, you know, Stocks was biased against McNary, that's simply not true. Stocks rolled over on McNary. Stocks rolled over on Petitioner equally. Did he get the benefit from the prosecution from incriminating these people? Well, Stocks also testified that he was a member of the Ace of Spades. So there is the bias right there as well on that issue. What I'm trying to figure out is how it was Stocks' testimony in the overall picture, that the defendant, McDonald, wanted to be a member of the Ace of Spades. Seems to me a pretty poor reason to kill somebody. That was Stocks' testimony, that McDonald wanted to be a member of the Ace of Spades. In terms of the other evidence of Petitioner's guilt, we have another witness, Run Demza. Is that evidence of nothing in and of itself? In and of itself. Everybody, in fact, I don't think that McDonald's briefs ever say that that wasn't the testimony. So that seemed to me to be kind of a wash, doesn't it? Well, standing alone, I mean, it could be argued that that provided evidence of motive. What we have also here is Run Demza's testimony, that Petitioner called the victim a walking dead man and said he knew where, when, and by whom the victim would be killed. We have another witness, Steele, testifying that at a party, Petitioner says that the victim is dishonest and can't be trusted. Most importantly, we have the guitar string, which is consistent with guitar strings found in the victim's home, which was determined to be the murder weapon. I haven't heard Petitioner explain that away. The guitar string, you know, it could come from anywhere. Well, this is a particular guitar string. There must be other guitar strings. This is a bass guitar string. And the person that was dating Petitioner's mother testified that the bass guitar string, out of four set of strings, was missing from a packet of strings. And that usually when he changes a string, he changes all four at once. And so the string that was missing from Petitioner's home was consistent with that bass guitar string, which was used to murder the victim. Was there something in the case that in order to get into Ace of Spades, McDonald had to commit a violent crime of some kind? No, Your Honor. And, in fact, Castaneda testified. You know, it didn't hang together very well. A German was the guy who wanted to get the victim. And I'm not sure, and at least at one point, McDonald protected the victim. That's correct. McDonald wasn't a part of the plan at that point, and that's why they didn't murder the victim. I don't want to criticize the prosecution at this point, but it sure doesn't seem like this case hangs together very well. Well, those are the facts of the case. German was in the Army. German had a beef with the victim. German directed these people to kill. These people then in turn recruited McDonald to participate in the killing. Didn't the prosecutor, I mean, this gang initiation and conspiracy, it seems there's not evidence of it without Castaneda, but that's what I thought the prosecutor in reading the closing, that's what she focused on was this whole gang conspiracy theory. As I stated earlier, Stocks as well testified that Petitioner wanted to be an ace of spades. That's the evidence from which the prosecutor argued that Petitioner's motive to kill, that he wanted to be a member of the ace of spades. That's duplicative of Castaneda's 402 hearing testimony. The rest of the 402 hearing testimony from Castaneda which pertains to McDonald actually is to his benefit. It shows that he was not involved in the beating up of German. In fact, he foiled the killing then, and that at no time was the killing of the victim mentioned as part of Petitioner's initiation into the ace of spades. As to the stipulation, I think there's a bit of confusion here, but I'll read to this court what the stipulation was at the first trial as read to the jury. Quote, the phone that Alex had when he was at Nicole's was not Skyler's. It was a phone that had been stolen from Billy Greek or Creek. I'm not sure yet. Neither party objected to that stipulation. Neither party said, hey, wait a second. You know, there should be more to it. There should be testimony establishing the time that the calls were made. That is a stipulation that's read to the jury. That's the stipulation that's at issue here. In the second trial, the defense wants. That was the first trial. Okay. Correct. Correct. In the second trial, the defense wants the prosecutor to test to stipulate basically to the time that the calls were made and that the calls were in fact made by the victim. In the second trial, we have different defendants. We have a we have now we have. McDonald. Were the calls made by McDonald or by the victim? The calls were made by the victim to two female witnesses. And the defense theory was that if if if the victim, excuse me, made those calls, then the victim was still alive at that time, 950 and 53 p.m. The prosecutor did not agree to that stipulation. It's not the same stipulation that was read to the jury at the first trial. We have different defendants here. We have simply a change in trial strategy and evidence. And in any event, as Your Honor pointed out, that testimony from those two female witnesses who received those phone calls was read to the jury. So there was evidence from which the defense could argue that those calls were in fact made by the victim. The prosecutor, on the other hand, argued that those calls were not made and those witnesses were not to be believed because of the fact that there was a phone call made from that stolen phone to the victim's phone number, which had been previously disconnected. So the prosecutor's argument was, well, the victim wouldn't call his own home phone, which he knew was disconnected. Therefore, it's not likely that he made that phone call, and therefore, it's not likely that he made those other phone calls. And those are simply two reasonable inferences which can be argued from the evidence. That is not misconduct. As to any of the other issues, unless this Court has any questions, I'd be prepared to submit. No further questions. Thank you, Mr. Lane. Thank you. Judge? Yes, briefly. On the record in front of the jury, the prosecutor, I'll make this very easy. I'll concede that the phone was stolen, that Alex had a stolen phone, and these phone records relate to that phone, and that phone calls were made on that phone by Alex. Maybe we can move on. There's then a short discussion. They talk about whether or not the person who had the phone stolen from them's name was Greek, as in the country, or Creek, as in a stream. The court, all right, may be so marked. Do you accept that stipulation, one of the counsel? Sure. Does anybody not accept? Then there was a question. The court then repeats the stipulation as follows. The phone that Alex had. Oh, I'm sorry, I didn't mean to. Go ahead and finish up. No, that's okay. The prosecutor read it. See, you've got an authority that says that it's a constitutional violation for a prosecutor not to make the same stipulation in the second trial as was made in the first trial, whether it's a different prosecutor and whether there may be a reason for changing one's mind. Yes, I do. Under California law, it's clear that a stipulation in one case is stipulating in a binding of others. Unless. Federal constitutional violation. That's correct. And that was evidence that the defense sought to introduce that was necessary to a fair trial in a defense. Are you saying then this is a due process violation? Absolutely. And I'm saying it gets more complicated and worse than that based upon the prosecutor's argument to the jury after she kept this out. And I've cited the Ninth Circuit cases that discuss the federal cases on the role of a prosecutor to achieve justice. Is it achieving justice to say we don't even know if he used his phone?  I think the prosecutor must abide by the Constitution. You know, sometimes we achieve justice, sometimes we don't. We have to follow the law. Okay. With regard to Stocks, Stocks' sole testimony about whether or not McDonald wanted to be a member of the ACES page was, I guess it was, quote, I guess so. So there was nothing in there about McDonald doing anything to be a member of the ACES page from Stocks. Was Stocks involved in this criminal prosecution as an unnamed conspirator or otherwise? That was never clarified. He was not prosecuted for the ATM murder, and he was never prosecuted with McNary afterwards for the robbery that he had committed with McNary afterwards. Was there an examination showing that his testimony got him favorable treatment as to other matters? No, that was not allowed. The defense was not allowed to go into that second robbery. That bias was never disclosed to the jury, and the California Supreme Court doesn't even talk about it. I'm sorry, the California Court of Appeals. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and we will hear argument in the last case for the morning, which is.
judges: Bright , O'scannlain, McKeown